UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

JOE HAND PROMOTIONS, INC.,

        Plaintiff,

      *v.*

CHRISTOS KOUVAROS, *individually, and as an officer, director, shareholder, member and/or principal of Plaza Patisserie, Inc. d/b/a Plaza Lounge*, TATIANA DIMAKIS, *individually, and as an officer, director, shareholder, member and/or principal of Plaza Patisserie, Inc. d/b/a Plaza Lounge*, and PLAZA PATISSERIE, INC. *d/b/a Plaza Lounge*,

        Defendants.

**REPORT & RECOMMENDATION**
20-CV-3979-EK-SJB

**BULSARA, United States Magistrate Judge:**

    Plaintiff Joe Hand Promotions, Inc. ("Joe Hand") brought this action alleging that Defendants Christos Kouvaros ("Kouvaros"), Tatiana Dimakis ("Dimakis"), and Plaza Patisserie, Inc. *d/b/a* Plaza Lounge ("Plaza Patisserie," and collectively, "Defendants") illegally broadcast the August 26, 2017 boxing match between Floyd Mayweather and Conor McGregor without paying for a commercial license.[1]

    After Defendants failed to appear or otherwise defend the lawsuit, Joe Hand moved for a default judgment, seeking damages for a violation of 47 U.S.C. § 605. Because a section 605 satellite piracy claim requires a plaintiff to allege that the intercepted content originated from a satellite—which Joe Hand failed to do—it is respectfully recommended that the motion for default judgment be denied.

---

[1] Mayweather defeated McGregor by TKO in the 10th round.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Joe Hand distributes and licenses sporting events to commercial establishments such as bars, restaurants, and shops. (Compl. dated Aug. 26, 2020 ("Compl."), Dkt. No. 1 ¶¶ 3–4). It alleges that it received exclusive rights to distribute commercially the boxing match between Floyd Mayweather and Conor McGregor, including the undercard bouts and commentary (collectively, the "Program"), on August 26, 2017. (*Id.* ¶¶ 5–6, 18; Commercial Licensing Agreement dated Aug. 1, 2017, attached to Suppl. Decl. of Jon D. Jekielek dated Jan. 24, 2022 ("Suppl. Jekielek Decl."), Dkt. No. 17 §§ 1–10, 12–13). Joe Hand licensed the Program to more than 6,000 establishments nationwide, authorizing them to show it to patrons for a fee "determined by the capacity of the establishment." (Compl. ¶ 11; Rate Card, attached to Suppl. Jekielek Decl.). Kouvaros and Dimakis are "officers, directors, shareholders, members and/or principals" of Plaza Patisserie, which operates an establishment called Plaza Lounge in Astoria, Queens, New York. (Compl. ¶¶ 7–8). Joe Hand alleges that Kouvaros and Dimakis "had the right and ability to supervise and an obvious and direct financial interest in" Plaza Patisserie, and "each approved, directly participated in, and/or assisted in" Plaza Patisserie's unauthorized showing of the Program. (*Id.* ¶¶ 9–10).

Joe Hand alleges that rather than pay the fee, Defendants unlawfully obtained the audiovisual feed "through an unauthorized cable signal, satellite signal, and/or internet stream." (Compl. ¶ 12). It alleges that commercial establishments generally use one or more methods to unlawfully obtain the Program: "(1) intercepting and redirecting cable or satellite service from a nearby residence, (2) registering their business location as a residence, (3) physically moving a cable or satellite receiver from a residence to their business, and/or (4) obtaining the Program in violation of the terms

2

of their television service provider agreement." (*Id.* ¶ 13). Alternatively, they may have accessed and exhibited an online stream permitted only for non-commercial use by paying a retail price of about $99.99. (*Id.* ¶ 14). Though it does not know which precise method Defendants used, Joe Hand alleges that they illegally obtained the Program at nominal cost and broadcast it. (*Id.* ¶ 15).

That is, "Defendants intentionally pirated the Program" "for the commercial purpose of attracting paying customers, patrons, members, and guests," and in so doing, infringed on Joe Hand's rights to license the event. (*Id.* ¶¶ 15–18; *see also* Facebook Screenshots, attached as Ex. 1 to Decl. of Ryan R. Janis dated May 3, 2021, Dkt. No. 13-3 (depicting screenshots of Plaza Lounge's Facebook page containing posts advertising that it would be showing Program)).

Joe Hand's complaint contains two causes of action: satellite and cable piracy under the Federal Communications Act of 1934 (the "FCA"), and copyright infringement. (Compl. ¶¶ 19–26). Defendants were served with a summons and a copy of the Complaint on October 14, 2020. (Kouvaros Aff. of Service dated Oct. 14, 2020 ("Kouvaros Aff. of Service"), Dkt. No. 6; Dimakis Aff. of Service dated Oct. 14, 2020 ("Dimakis Aff. of Service"), attached to Kouvaros Aff. of Service; Plaza Patisserie Aff. of Service dated Oct. 14, 2020 ("Plaza Patisserie Aff. of Service"), attached to Kouvaros Aff. of Service). Defendants failed to appear, answer, or otherwise respond to the Complaint. Joe Hand sought, (Req. for Certificate of Default dated Jan. 25, 2021, Dkt. No. 8), and the Clerk of Court entered, a certificate of default as to all three Defendants.

(Certificate of Default dated Jan. 29, 2021 ("Certificate of Default"), Dkt. No. 9).[2] Joe Hand then filed the present motion for default judgment on May 3, 2021. (Notice of Mot. for Default J. dated May 3, 2021 ("Notice of Mot."), Dkt. No. 13). The Honorable Eric R. Komitee referred it to the undersigned for a report and recommendation. Joe Hand seeks recovery of: (1) $3,700 in statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(i)(II); (2) $11,100 in enhanced statutory damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii); and (3) $550 in costs. (Mem. of P. & A. dated Mar. 30, 2021 ("Mem."), Dkt. No. 13-1 at 5–8, 15; Decl. of Jon D. Jekielek dated May 3, 2021 ("Jekielek Decl."), Dkt. No. 13-5 at 2).

I.     ENTRY OF DEFAULT

Rule 55 of the Federal Rules of Civil Procedure establishes a two-step process for obtaining a default judgment. *See Shariff v. Beach 90th St. Realty Corp.*, No. 11-CV-2551, 2013 WL 6835157, at *3 (E.D.N.Y. Dec. 20, 2013) (adopting report and recommendation). First, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Second, after default has been entered, and the defendant fails to appear or move to set aside the default under Rule 55(c), the Court may, on plaintiff's motion, enter a default judgment against that defendant. *Id.* r. 55(b)(2).

---

[2] Joe Hand first filed a motion for default judgment on March 30, 2021. *See* Notice of Mot. for Default J. dated March 30, 2021, Dkt. No. 10. The Court subsequently entered an order to show cause "as to why its motion should not be denied for improper service" and provided the alternative option of withdrawing and refiling the motion upon proper service. Order to Show Cause dated Apr. 23, 2021, Dkt. No. 11 at 3. Joe Hand withdrew the motion. Mot. to Withdraw dated Apr. 30, 2021, Dkt. No. 12.

The Clerk entered a default against all Defendants on January 29, 2021.

A threshold question before reaching liability or damages is whether the alleged conduct is sufficient to warrant default judgment being entered. In determining whether to enter a default judgment, the Court is guided by the same factors that apply to a motion to set aside entry of a default. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993); *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170–71 (2d Cir. 2001). These factors are "1) whether the defendant's default was willful; 2) whether the defendant has a meritorious defense to plaintiff's claims; and 3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003) (citation omitted).

As to the first factor, the failure by Defendants to respond to the Complaint demonstrates the default was willful. *See, e.g.*, *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007). They had sufficient notice of the present litigation. All three were properly served with a summons and the Complaint. (Kouvaros Aff. of Service; Dimakis Aff. of Service; Plaza Patisserie Aff. of Service). The motion for default judgment and Certificate of Default were also served properly. (Certificate of Service filed Jan. 19, 2022, Dkt. No. 16). Notwithstanding this notice and service, Defendants did not respond to the Complaint, did not appear, and have not in any way attempted to defend themselves.

As to the second factor, as explained below, because there is no basis to impose liability on the claim on which Joe Hand seeks a default judgment, it is inappropriate for the Court to enter a default judgment. As such, the Court need not reach the prejudice inquiry.

## II. LIABILITY

In deciding a motion for default judgment, a court "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor." *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009). A party's default is deemed an admission of all well-pleaded allegations of liability. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *Morales v. B&M Gen. Renovation Inc.*, No. 14-CV-7290, 2016 WL 1266624, at *2 (E.D.N.Y. Mar. 9, 2016), *report and recommendation adopted*, 2016 WL 1258482, at *2 (Mar. 29, 2016).

"Nevertheless, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law." *LaBarbera v. ASTC Labs. Inc.*, 752 F. Supp. 2d 263, 270 (E.D.N.Y. 2010) (adopting report and recommendation) (citation and quotations omitted); *see also* 10A Charles Alan Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2688.1 (4th ed. 2021) ("Once the default is established, defendant has no further standing to contest the factual allegations of plaintiff's claim for relief. Even after default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit conclusions of law.").

Joe Hand originally brought claims under four statutory provisions: sections 553 and 605 of the FCA and sections 106 and 501 of the Copyright Act. (Compl. ¶¶ 19–26). In moving for a default judgment, however, Joe Hand's memorandum of law makes no mention of the Copyright Act claims. And it also does not address liability, proceeds directly to damages, and indicates that it is only seeking damages for a violation of section 605 of the FCA. (Mem. at 4 n.2 ("Plaintiff now solely moves for an award of

6

damages under the Communications Act, specifically, 47 U.S.C. § 605")).³ The Court, therefore, only analyzes liability under section 605, and treats the other claims as abandoned. *See Joe Hand Promotions, Inc. v. Batista*, No. 20 Civ. 6460, 2021 WL 3855315, at *5 n.1 (S.D.N.Y. July 23, 2021) ("Although it also asserted a claim under sections 106 and 501 of the Copyright Act, 17 U.S.C. § 101 *et seq.*, JHP now moves solely for an award of damages under the [FCA]. Accordingly, the Court deems JHP to have expressly abandoned its copyright claims.") (citing *Vlad-Berindan v. N.Y.C. Metro. Transp. Auth.*, 779 F. App'x 774, 776 n.1 (2d Cir. 2019)) (internal citations and quotations omitted), *report and recommendation adopted*, No. 20-CV-6460, 2021 WL 3855311, at *1 (Aug. 27, 2021); *Arch Specialty Ins. Co. v. Canbert Inc.*, No. 19-CV-05920, 2021 WL 1200329, at *3 (E.D.N.Y. Mar. 9, 2021) ("In the Complaint, Plaintiff also included a claim for unjust enrichment, but that claim was not discussed in the Motion [for Default Judgment]. Accordingly, the undersigned respectfully recommends that it be deemed abandoned."), *report and recommendation adopted*, 2021 WL 1193004, at *1 (Mar. 30, 2021); *accord Maas v. Spencer Leasing Corp.*, No. 12-CV-02951, 2013 WL 5308859, at *10 (E.D.N.Y. Sept. 18, 2013) ("[T]he Court notes that Plaintiff's Motion for Default Judgment does not address the liability or damages

---

³ Joe Hand's memo contends—by citing to an Eleventh Circuit case—that because of Defendants' default, "the only issue remaining to be decided in this case is the amount of damages[.]" Mem. at 2. The Court, however, as the Second Circuit instructs, must first determine whether the admitted facts state a cause of action before it can turn to damages. *Supra* at 6; *see also Ixotic AG v. Kammer*, No. 09-CV-4345, 2015 WL 270028, at *8 (E.D.N.Y. Jan. 21, 2015) ("The fact that a complaint stands unanswered does not, however, suffice to establish liability on its claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.").

7

associated with this cause of action.  Nor does Plaintiff's own declaration address this issue.  It appears then that Plaintiff has abandoned this particular claim.") (internal citation omitted).

Section 605 "generally prohibits the unauthorized use or publication of wire or radio communications."  *Int'l Cablevision, Inc. v. Sykes* (*Sykes I*), 997 F.2d 998, 1007 (2d Cir. 1993).  Joe Hand alleges that Defendants violated section 605(a) "through the interception and receipt of a cable and/or interstate satellite signal."  (Compl. ¶¶ 19–22).

Section 605(a) ("Practices prohibited") bars a number of acts, and its sentences are generally analyzed separately. *Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318, 2017 WL 696126, at *8 (S.D.N.Y. Feb. 15, 2017), *report and recommendation adopted*, 2017 WL 2988249, at *2 (Mar. 27, 2017).  The Complaint does not specify which subsection or subsections of section 605(a) Defendants allegedly violated.[4]  Each sub-provision of the paragraph is analyzed in turn below.

The first sentence of section 605(a)

> prohibits persons "receiving, assisting in receiving, transmitting, or assisting in transmitting . . . any interstate or foreign communication by wire or radio" from divulging or publishing the contents of that communication except in specified, authorized ways.

*Int'l Cablevision, Inc. v. Sykes (Sykes II)*, 75 F.3d 123, 129 (2d Cir. 1996) (ellipsis in original) (quoting § 605(a)).  This sentence is "intended to regulate the conduct of communications personnel . . . rather than to address the problem of unauthorized interception or reception of communications."  *Joint Stock Co. Channel One Russia*

---

[4] The memorandum does not either.  The other provisions of section 605 do not impose liability, but establish exceptions and contain definitions of terms in the section.

8

*Worldwide v. Infomir LLC*, No. 16-CV-1318, 2019 WL 8955234, at *10 (S.D.N.Y. Oct. 25, 2019) (ellipsis in original) (quoting *Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 468-69 (E.D.N.Y. 2012)), *report and recommendation adopted*, 2020 WL 1467098, at *1 (Mar. 26, 2020).  As such, this sentence could not be the basis for liability here.  *Id.*

      The second sentence of section 605(a) provides that:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.

In common parlance, this subsection prohibits the "interception of a radio communication . . . [and] its publication to a third party."  *Sykes II*, 75 F.3d at 131 n.4 (quotations omitted).

      "The term 'radio communication,' as used in the Communications Act, has long been understood to include satellite transmissions."  *Joint Stock Co. Channel*, 2017 WL 696126, at *8.  "The case law leaves no doubt that the term intercept or interception means to stop, seize, or interrupt prior to arrival; or taking or seizing before arrival at the destined place."  *Premium Sports Inc. v. Connell*, No. 10-CV-3753, 2012 WL 691891, at *2 (S.D.N.Y. Mar. 1, 2012) (quotations omitted) (collecting cases).

      The third sentence of section 605(a) provides that:

> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

This subsection prohibits persons from receiving and using radio and satellite communications for the benefit of himself or others without authorization.  "Courts have repeatedly interpreted this sentence to prohibit the unauthorized [disclosure] or use of

9

[satellite] communications, even if the communications have been received legally." *Directv, LLC v. Wright*, No. 15-CV-474, 2016 WL 3181170, at *4 (W.D.N.Y. June 3, 2016) (second alteration in original) (quotations omitted) (collecting cases); *e.g.*, *Dish Network L.L.C.*, 893 F. Supp. 2d at 473 ("Plaintiffs have alleged that the Defendants with individual accounts received the DISH signal containing the subject channels and divulged the satellite signal to World Cable and the World Cable subscribers, which were not authorized to receive the subject channels, for financial gain. These facts plausibly allege that the Defendants violated the third sentence of § 605(a)."). Unlike the second sentence of section 605(a), no "interception" is required for there to be a violation. *Joint Stock Co. Channel*, 2017 WL 696126, at *7 ("[T]he third sentence of § 605(a) does not require pleading or proof that the defendant intercepted a satellite transmission or other radio communication."); *e.g.*, *That's Entm't v. Old Bridge Tavern*, No. 94-C-2612, 1996 WL 148045, at *2 (N.D. Ill. Mar. 28, 1996) ("Even if there was no circumstantial evidence that Old Bridge intercepted the signal, there is direct evidence that defendant broadcast the transmission which is enough to violate the statute.").

>The fourth sentence of section 605(a) provides that:
>
>No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

This subsection prohibits the publication of intercepted communications to unauthorized persons or use of such communications for the benefit of unauthorized

persons. Sentence four is similar to sentence two. Like sentence two, it requires the "interception" of a radio communication (a requirement that is lacking in sentence three); however, the interception must be knowing. *Joe Hand Promotions, Inc. v. That Place, LLC*, No. 11-CV-931, 2012 WL 2525653, at *3 (E.D. Wis. June 29, 2012). A violation of sentence three need not be a knowing violation. *Id.*

Joe Hand's allegations—even when accepted as true—do not state a violation of section 605(a). The relevant provisions of section 605(a)—sentences two, three and four—are based on interception, publication, and/or disclosure of "radio communications." The term "radio communications" encompasses a "satellite communication." *Joint Stock Co. Channel*, 2017 WL 696126, at *8. But the Complaint never alleges that the Program was transmitted over satellite or that it was a satellite communication, and without any such allegation, no section 605 liability will lie. *J & J Sports Prods., Inc. v. Ventura*, No. 18 CV 2972, 2019 WL 2451632, at *7 (S.D.N.Y. Jan. 30, 2019) ("In this case, the Complaint lacks any reference that the Event was a radio communication, that it was transmitted via satellite, or that it was a satellite communication and thus, the Court cannot infer a violation of § 605(a)."); *J & J Sports Prods., Inc. v. Boodram*, No. 18-CV-5087, 2019 WL 6388811, at *2 (E.D.N.Y. June 24, 2019) ("The type of signal that carried the communication is a necessary element of a cause of action under § 605(a) or § 553, without which no liability may be found, and no relief may be granted.") (collecting cases), *report and recommendation adopted*, 2019 WL 4463352, at *4 (Sept. 18, 2019).

"[A] plaintiff need not allege how the defendant actually received the signal; all that must be alleged to state a Section 605 claim is that the communication originated via satellite or radio." *J & J Sports Prods., Inc. v. Abdelraouf*, No. 18-cv-2547, 2019 WL

11

457719, at *3 (E.D.N.Y. Feb. 5, 2019) (adopting report and recommendation) (quotations and alterations omitted).  This basic—but vital—allegation is missing from the Complaint.  All the Complaint alleges is that "[u]pon information and belief, Defendants' exhibition of the Program was accomplished through the interception and receipt of a cable and/or interstate satellite signal." (Compl. ¶ 20).  That does not allege that the Program originated via satellite because, at best, it describes what happened at the point of interception, not what happened at transmission.[5]  Courts have repeatedly rejected arguments that such allegations are sufficient to make out a section 605 violation.  *J & J Sports Prods., Inc. v. Nacipucha*, No. 17-CV-1186, 2018 WL 2709222, at *5 (E.D.N.Y. May 18, 2018), *report and recommendation adopted*, 2018 WL 2709200, at *1 (June 5, 2018).  As Judge Ross held in a similar case where the plaintiff hedged about the manner of transmission:

> [P]laintiff recognizes that the complaint fails to specifically allege a satellite violation, but it maintains that the court can "reasonably infer[ ]" that the transmission originated by satellite.  I find this argument unpersuasive; . . . "[I]t is not axiomatic that J&J's distributions are satellite transmissions," as opposed to transmissions of other types, such as cable transmissions protected by section 553.  Indeed, particularly where a plaintiff pleads a violation of sections 605 *and* 553, courts have found it inappropriate to infer that a plaintiff has stated a claim under either section absent sufficient factual allegations regarding the manner of the transmission.

---

[5] In any event, "conclusory allegations based on information and belief"—like paragraph 20 of the Complaint—are generally "insufficient to support a finding of default-based liability." *Tabak v. Lifedaily, LLC*, No. 21 CV 04291, 2021 WL 5235203, at *2 (S.D.N.Y. Nov. 9, 2021) (quoting *Flanagan v. N. Star Concrete Const., Inc.*, No. 13-CV-2300, 2014 WL 4954615, at *6 (E.D.N.Y. Oct. 2, 2014)); *e.g.*, *Kingvision Pay-Per-View, Ltd. v. Los Mellizos Bar Rest. Corp.*, No. 06 CV 6251, 2007 WL 1703773, at *2 (E.D.N.Y. June 8, 2007).  Even if Joe Hand could not allege the means of interception except on information and belief, as the content-holder and licensor it would be able to plead the means and the origin of the transmission—the *sine qua non* of a section 605(a) claim—which is within its own knowledge.

*Abdelraouf*, 2019 WL 457719, at *3 (internal citations omitted); *see also J & J Sports Prods., Inc. v. Evolution Entm't Grp., LLC*, No. 13-5178, 2014 WL 3587370, at *2 (E.D. La. July 21, 2014) ("Plaintiff has not presented any competent summary judgment evidence regarding whether the boxing match was delivered via cable, satellite, or otherwise.  The Gagliardi affidavit lists numerous ways in which Plaintiff's programming has been intercepted from either cable or satellite transmissions, without opining as to what actually occurred in this case."); *J & J Sports Prods., Inc. v. Flor De Cuba, TX, Inc.*, No. 13-CV-3282, 2014 WL 6851943, at *2 (S.D. Tex. Dec. 3, 2014) ("J & J has not established whether the Event was broadcast over cable or satellite transmissions[.]"); *Joe Hand Promotions, Inc. v. Breaktime Bar, LLC*, No. 12-CV-2618, 2014 WL 1870633, at *4 (W.D. La. May 8, 2014) ("[P]laintiff has not shown whether the PPV was broadcast via satellite or cable or how Breaktime intercepted the PPV, which determines whether Breaktime's conduct violates 47 U.S.C. § 605 or 47 U.S.C. § 553.").

It is quite straightforward for Joe Hand—the distributor of the programming that is said to have been infringed—to allege how that communication is transmitted.  This is not a significant undertaking, since these facts are within its knowledge.  As noted, "all that needs to be alleged (to state a § 605 claim) is that the communication *originated* via satellite."  *J & J Sports Prods., Inc. v. Ferreiras*, No. 15-CV-6546, 2018 WL 6168557, at *7 (E.D.N.Y. Nov. 20, 2018), *adopted in relevant part*, 2020 WL 2553265, at *1–*2 (May 20, 2020); *Abdelraouf*, 2019 WL 457719, at *3 ("[T]he primary condition for a section 605 violation . . . [is] that the communication in question originate via radio or satellite transmission.").  And plaintiffs like Joe Hand have met that low bar in other cases with virtually identical allegations.  *G&G Closed Cir. Events, LLC v. Hussain*, No. 20-CV-04280, 2021 WL 6424602, at *3 (E.D.N.Y. Oct. 13, 2021) ("[P]laintiff alleges that

13

defendant intercepted its signal, which originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal. . . . Though plaintiff seems to be unsure of the exact method defendant used to intercept the broadcast . . . . [a]s plaintiff has alleged that its signal for the Program originated via satellite, this Court recommends finding that plaintiff has stated a claim under Section 605(a)[.]") (internal citations and quotations omitted), *report and recommendation adopted as modified*, 2021 WL 6112514, at *2 (E.D.N.Y. Dec. 27, 2021);[6] *G&G Closed Cir. Events, LLC v. Pacheco*, No. 20-CV-7457, 2021 WL 4296649, at *1 (S.D.N.Y. Sept. 20, 2021) ("The Program originated via satellite uplink and was subsequently re-transmitted to cable systems and satellite companies via satellite signal."); *Joe Hand Promotions, Inc. v. Mohamed*, No. 20-CV-557, 2021 WL 2895637, at *1 (E.D.N.Y. July 9, 2021) (same). This Complaint, however, lacks this basic direct allegation.

Without a basis to impose section 605 liability, it is axiomatic that section 605 damages cannot be awarded. Because that is the sole kind of damages sought in the motion, the request for a default judgment must be denied.

---

[6] Joe Hand's brief makes additional allegations not contained in the Complaint: "The interstate satellite transmission of the Event was electronically coded or scrambled and was not intended for the use of the general public. If a commercial establishment was authorized by Plaintiff to receive the Event, it was provided with the electronic decoding equipment and the satellite coordinates necessary to receive the signal." (Mem. at 3). But the Court cannot consider, and certainly cannot accept as true, allegations in a brief that fill in gaps in a complaint. *E.g., J & J Sports Prods., Inc. v. RK Soto Enterprises Inc.*, No. 17-CIV-2636, 2020 WL 7684894, at *12 (E.D.N.Y. Feb. 7, 2020) ("[P]apers submitted in support of J & J's motion for default judgment cannot be used to remedy the defects in the Amended Complaint as courts in this District have rejected that argument time and time again.") (collecting cases), *report and recommendation adopted*, No. 17-CV-2636, 2020 WL 7041089, at *3 (E.D.N.Y. Dec. 1, 2020).

## CONCLUSION

For the reasons explained above, it is respectfully recommended that the motion for default judgment be denied.[7]

Any objections to the Report and Recommendation above must be filed with the Clerk of Court within 14 days of receipt of this report.  Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate [judge's] report operates as a waiver of any further judicial review of the magistrate [judge's] decision.") (quotations omitted).

SO ORDERED.

*/s/ Sanket J. Bulsara*  2/1/2022
SANKET J. BULSARA
United States Magistrate Judge

Brooklyn, New York

---

[7] Joe Hand can file an Amended Complaint that cures these deficiencies, serve Defendants, and then attempt to obtain a default judgment thereafter, if appropriate.

15